
08/02/2007

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| DIAMOND K. CORP. and | § | Case No. 04-50356 |
| R&K ENERGY, INC., | § | (Jointly Administered) |
| | § | |
| Debtors. | § | |
| | § | |
| DIAMOND K. CORP., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Adv. No. 06-5021 |
| | § | |
| ALPHA CONCRETE, INC., | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION REGARDING**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Diamond K Corporation (the "Debtor") initiated the main bankruptcy case associated with this adversary proceeding by filing a petition for relief under Chapter 11 of the Bankruptcy Code on November 4, 2004 (the "Petition Date"). In this adversary proceeding, the Debtor seeks to recover several allegedly preferential transfers made by Hooks Independent School District and Mount Pleasant Independent School District to Alpha Concrete, Inc. (the "Defendant") pursuant to 11 U.S.C. §§ 547 and 550. This matter is now before the Court on the Defendant's request for summary judgment.

**I. JURISDICTION**

A proceeding to recover a preferential transfer raises a core matter over which this Court has jurisdiction to enter a final order. 28 U.S.C. §§157(b)(2)(F) and 1334.

## II. BURDEN OF PROOF

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c). If, as in this case, the burden of persuasion at trial must be borne by the non-moving party, the party moving for summary judgment may satisfy the burden of production under Rule 56 of the Federal Rules of Civil Procedure by either submitting affirmative evidence that negates an essential element of the non-moving party's claim, or by demonstrating that the non-moving party's evidence is insufficient to establish an essential element of the non-moving party's claim. *Celotex v. Catrett,* 477 U.S. 317, 331 (1986); *Lavespere v. Niagra Machine & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990). The non-movant must then present "specific facts showing there is a genuine issue for trial." FED. R. CIV. P. 56(e).

Local District Court Rule CV-56 (made applicable to this proceeding by Rule 7056 of the Local Bankruptcy Rules of Procedure) provides that the party moving for summary judgment must include in its motion a "Statement of Material Facts" in a specified format. A party opposing a motion for summary judgment must file a "Statement of Genuine Issues" in response to the movant's statement of material facts, with specific references to proper summary judgment evidence indicating that a genuine issue of material fact exists.[1] In resolving a summary judgment motion, any material facts claimed by the moving party and supported by admissible evidence are admitted by the non-movant, unless the non-movant timely controverts such material facts with

---

[1] The purpose of this rule is to streamline the resolution of summary judgment motions and to make explicit the parties' respective obligations with regard to such motions. *See generally, Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 921-22 (7th Cir. 1994).

2

proper summary judgment evidence of its own. The Court will not engage in a comprehensive search for the existence of an undesignated genuine issue of material fact.

Here, the parties failed to comply with the relevant Local Rules by providing the Court with statements of material fact and genuine issues. Instead, the Motion and the Debtor's opposition to the Motion contain descriptions of the background to the parties' dispute. The Court, having reviewed recitation of facts contained in the Defendant's Motion and in the Debtor's opposition to the Motion as well as the supporting evidence submitted by the parties, finds that the parties have set forth the following body of relevant, uncontested facts.

## III. UNCONTESTED FACTS

The Debtor was the general contractor on a construction project for Hooks Independent School District ("HISD") and on a separate construction contract for Mount Pleasant Independent School District ("MPISD"). The Defendant was one of the subcontractors chosen by the Debtor to work on the projects. The Defendant periodically requested payment for its labor and materials by submitting applications for payment to the Debtor.[2]

Initially, the client on each project would pay the Debtor for the Defendant's work on that project, and the Debtor would then, in turn, pay the Defendant. However, at some point during the course of the projects, the Debtor requested that the payments for the Defendant's work on the projects be made by joint check from HISD or MPISD to the

---

[2] The Debtor and the Defendant entered into a form "Subcontract for Construction" on each of the Projects. The subcontracts provided that the Debtor's obligation to make payments to the Defendant was conditioned on the Debtor's receipt of payments from MPISD and HISD. In addition, Paragraph 4 of Article 14 and Paragraphs 5.2.7 and 5.2.5 of Article 5 of the subcontracts provided that "[t]he Subcontractor hereby acknowledges that it relies solely and exclusively on the credit of the Owners, not the Contractor, for payment for its work."

3

Debtor and the Defendant.[3] HISD and MPISD complied with the Debtor's request. The Debtor now seeks to recover from the Defendant the funds represented by three joint checks in the total amount of $50,693.68 issued in the 90 days prior to bankruptcy.

In particular, the Defendant submitted Payment Application No. 8 to the Debtor for the MPISD project on or about August 20, 2004. Application No. 8 stated that the current payment due to the Defendant was $11,414.21. MPISD issued a check payable to the Debtor and the Defendant in the amount of $11,414.20 and dated October 1, 2004.

The Defendant submitted Payment Application No. 9 to the Debtor for the MPISD project on about August 20, 2004. Application No. 9 stated that current payment due to the Defendant was $18,448.72. MPISD issued a check payment to the Debtor and the Defendant in the amount of $18,448.73 and dated October 25, 2004.

The Defendant submitted Payment Application No. 17 for the HISD project on or about March 11, 2004. Application No. 17 stated that the total payment due to the Defendant was $20,830.75. HISD issued a check payable to the Debtor and the Defendant in the amount of $20,830.75 and dated August 10, 2004.

## IV. LEGAL ANALYSIS

### A. Standards for Avoidance of Preferential Transfers

Sections 547(b) and 550 of the Bankruptcy Code authorize the avoidance and recovery of a transfer of "an interest of the debtor in property" *if* five conditions are satisfied and *unless* one of seven exceptions defined in §547(c) is applicable. The five characteristics of an avoidable transfer are that it (1) benefit a creditor; (2) be on account

---

[3] Joint checks are sometimes used by project owners in the construction industry to ensure that subcontractors get paid and to prevent potential lien claims. *See* Michael B. Lubic and Jennifer M. Phelps, *Contractors' Joint Check Agreements: Use at Your Peril*, 20 AM. BANKR. INST. J. 16 (March 2001). The Debtor has not attacked this payment arrangement as preferential or presented any evidence that it requested that entered to the joint check arrangement during the 90 days prior to bankruptcy.

4

of antecedent debt; (3) be made while the debtor was insolvent; (4) be made within 90 days before bankruptcy; and (5) enable the creditor to receive a larger share of the estate than if the transfer had not been made.  Section 547(f) provides that a debtor is presumed to have been insolvent during the 90-day period preceding bankruptcy.  Section 547(g) expressly states that the debtor has the burden of proving the remaining elements of a preferential transfer under subsection (b), and the creditor or party in interest against whom recovery is sought has the burden of proving the non-avoidability of a transfer under subsection (c).

Here, the Defendant challenges the Debtor's *prima facie* case.  The Defendant argues, *inter alia*, that the funds represented by the joint checks issued on the projects were not property of the Debtor.[4]  In response, the Debtor attempts to shift the burden of establishing the elements of a §547(b) case onto the Defendant, arguing that "[t]he Defendants have offered no evidence as to why a check that is made out to Diamond K would not be property of the estate."

### B. Determining Whether a Transfer Involves an Interest of the Debtor

For a transfer to be avoided as preferential under §547(b) of the Bankruptcy Code, "it is essential that the debtor have an interest in the property transferred so that the estate is thereby diminished."  *Coral Petroleum, Inc. v. Banque Paribas-London,* 797 F.2d 1351, 1356 (5th Cir. 1986) (quoting *Genova v. Rivera Funeral Home ( In re Castillo),* 39 Bankr. 45, 46 (Bankr.D.Colo.1984)).  The Supreme Court has described the test under §547 as follows:

---

[4] The Defendant additionally argues that it was not a creditor of the Debtor and seeks to affirmatively establish that the payments were made in the "ordinary course of business" within the meaning of §547(c)(2) of the Bankruptcy Code.

5

> The Bankruptcy Code does not define "property of the debtor." Because the purpose of the avoidance provision is to preserve the property includable within the bankruptcy estate - ***the property available for distribution to creditors*** - "property of the debtor" subject to the preferential transfer provision is best understood as that property that would have been part of the estate had it not been transferred before the commencement of bankruptcy proceedings.

*Begier v. I.R.S.,* 496 U.S. 53, 58 (1990) (emphasis added).[5] The Fifth Circuit has repeatedly applied the *Beiger* standard in determining whether a transfer is avoidable under §547 of the Bankruptcy Code:

> The primary consideration in determining if funds are property of the debtor's estate is whether the payment of those funds diminished the resources from which the debtor's creditors could have sought payment. Conversely, if funds cannot be used to pay the debtor's creditors, then they generally are not deemed an asset of the debtor's estate for preference purposes. A common example is when a debtor holds funds in trust for another.

*In re Maple Mtg., Inc.,* 81 F.3d 592 (5th Cir. 1996); *see also, e.g., In re Southmark Corp.,* 49 F.3d 1111, 1117 (5th Cir. 1995).

Thus, in the present case, the issue presented for summary judgment is whether the endorsement and transfer of the joint checks to the Defendant diminished the property available for distribution to the Debtor's creditors. Numerous courts have held that the

---

[5] The drafters of the Bankruptcy Code made clear the purpose of §547:

The purpose of the preference section is two-fold. First, by permitting the trustee to avoid prebankruptcy transfers that occur within a short period before bankruptcy, creditors are discouraged from racing to the courthouse to dismember the debtor during his slide into bankruptcy. The protection thus afforded the debtor often enables him to work his way out of a difficult financial situation through cooperation with all of his creditors. Second, and more important, the preference provisions facilitate the prime bankruptcy policy of equality of distribution among creditors of the debtor. Any creditor that received a greater payment than others of his class is required to disgorge so that all may share equally. The operation of the preference section to deter 'the race of diligence' of creditors to dismember the debtor before bankruptcy furthers the second goal of the preference section-that of equality of distribution.

*Coral Petroleum*, 797 F.2d 1355 (quoting H.R.Rep. No. 595, 95th Cong. 1st sess. 177-78 (1977), U.S. Code Cong. & Admin.News, 1978, pp. 5787, 6138).

funds represented by joint checks are not recoverable as preferences under the doctrine of earmarking or under a conduit theory. As one bankruptcy court explained:

> It is generally recognized that where the payee controls the application of the funds by requiring dual endorsement before the check can be negotiated, the funds are claimed to be earmarked funds on the specific condition that the joint payee shall receive the proceeds, the Debtor who is already a named payee is merely deemed to be a conduit for those funds, which did not become property of the Debtor's estate.

*In re Winsco Builders (Jenson v. Pen Air Conditioning, Inc.),* 156 B.R. 98, 100-01 (Bankr. M.D. Fla. 1993) (funds the property owners earmarked for payment to materialman by making their checks jointly payable to the general contractor and materialman could not be recovered as preferential). *See also, e.g., In re Davidson Lumber Sales, Inc.,* 66 F.3d 1560, 1568 n. 10 (10th Cir. 1995) (debtor/subcontractor was merely a conduit for funds paid by the general contractor to material supplier with a joint check payable to the material supplier and the debtor/subcontractor); *Mid-Atlantic Supply v. Three Rivers Aluminum Co.*, 790 F.2d 1121, 1127 (4th Cir. 1986) (in an action by manufacturer to recover joint check in debtor's possession, finding that the debtor/subcontractor was a mere conduit and that its role was simply to endorse the check and pass it on to the manufacturer).

Additionally, the Fifth Circuit has suggested that if a debtor has only a legal interest in a joint check, then the funds represented by the joint check may not be recovered as a preferential transfer. *See Georgia Pacific Corp. v. Sigma Service Corp.,* 712 F.2d 962 (5th Cir. 1983). In *Georgia Pacific*, a debtor/contractor instructed the project owners that payments to materialmen and suppliers should be accomplished by sending checks jointly payable to both the debtor/contractor and the materialmen. As in the present case, the project owners complied with the debtor/contractor's request. The

7

debtor/contractor in *Georgia Pacific*, however, did not endorse the checks over to the materialmen but, instead, filed for bankruptcy. The Fifth Circuit held that the debtor/contractor had at least a legal interest in the joint checks, which was property of the estate under §541 of the Bankruptcy Code. *Id.* at 968. Although the Fifth Circuit did not determine whether the materialmen had a superior equitable interest in the joint checks,[6] the Fifth Circuit noted that "[i]f indeed all or part of the money so owed was subject to a constructive trust in favor of the suppliers …, the bankruptcy court would be required to recognize those equitable interests and, perhaps, the debtor in possession's sole permissible administrative act with regard thereto would be to pay over or endorse the sums due to the beneficial owners of the property." *Id. See also, e.g., Jackson v. Flohr*, 227 F.2d 607, 610-11 (9th Cir. 1955) (joint checks from the project owner payable to a debtor contractor and a subcontractor/lien claimant never became the debtor's property and could not be recovered as a preference as the debtor "merely endorsed" the checks); *In re Mastercraft Metals, Inc. (Strauss v. Mastercraft Metals, Inc.)*, 114 B.R. 183 (Bankr. W.D. Mo. 1990) (debtor-contractor held check issued jointly to debtor and materialman as mere "trustee" for materialman so that check was not proceeds of debtor's accounts receivable to which bank's security interest attached); *In re Sun Belt*

---

[6] Under Chapter 162 of the Texas Property Code, commonly referred to as the "Construction Trust Fund Statute," all monies paid to a contractor or subcontractor under a construction contract and all loan proceeds received by an owner, contractor or subcontractor for improvement of specific real property in Texas are deemed to be "trust funds" for the benefit of those persons furnishing labor or materials for the construction. *See* TEX. PROP. CODE ANN. § 162.001, *et seq.* The beneficiaries of this trust fund are designated as follows:

> An artisan, laborer, mechanic, contractor, subcontractor or materialman who labors or who furnishes labor or material for the construction or repair of an improvement on specific real property in this state is a beneficiary of any trust funds paid or received in connection with the improvement.

TEX. PROP. CODE ANN. § 162.003.

8

*Electrical Constructors, Inc.*, 56 B.R. 686, 691 (Bankr. N.D. Ga. 1986) (debtor's creditors had no interest in joint checks and debtor's only permissible acts with respect to funds would be to endorse checks over to subcontractor or to abandon checks).

Here, the Debtor has failed to present an issue for trial as to whether it had anything more than a bare legal interest in the joint checks. The Debtor failed to submit any evidence that the joint checks were ever intended for the Debtor or that it had any authority over the funds represented by the joint checks sufficient to establish "an interest of the debtor in property" within the meaning of §547(b) of the Bankruptcy Code. Moreover, the Debtor failed to submit any evidence that the transfer of its legal interest in the joint checks resulted in any diminution to its estate. To the contrary, the Debtor's accounts receivable for HISD and MPISD were reduced by, at the same time, its liability to HISD, MPISD and the Defendant. *See Reiser v. Bruck Plastics Co. (In re Trinity Plastics, Inc.)*, 138 B.R. 203, 207 (Bankr. S.D. Ohio 1992) (funds transferred to debtor's supplier by means of a joint check did not diminish debtor's estate).

## V. CONCLUSION

For the foregoing reasons, the Court concludes that the Debtor has failed to offer any summary judgment proof to establish a genuine issue for trial as to an element of its *prima facie* case. Accordingly, the Defendant's Motion for Summary Judgment should be granted. The Court will enter an appropriate judgment incorporating this Memorandum Opinion.

Signed on 8/2/2007

*Brenda T. Rhoades*    MD
HONORABLE BRENDA T. RHOADES,
UNITED STATES BANKRUPTCY JUDGE